UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM McKETHAN, Prisoner 93-A-6107

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

P. FALESKI; C. TUERO; J. OSTERHOUDT;
W.C. GREEN; F. BUTLER; HEALEY and
FARRELL, Officially, Unofficially, Jointly,
Individually and Severally,

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

**COMPLAINT**

under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial: ☐ Yes ☑ No
*(check one)*

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

MAR 24 2010

LAWRENCE K. BAERMAN, CLERK
ALBANY

I.    **Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current place of
confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper
as necessary.

Plaintiff      Name __William McKethan__
              ID # __93-A-6107__
              Current Institution __Shawangunk C.F.__
              Address _____
              _____

B.    List all defendants' names, positions, places of employment, and the address where each defendant
may be served.  Make sure that the defendant(s) listed below are identical to those contained in the
above caption.  Attach additional sheets of paper as necessary.

Defendant No. 1    Name  P. FALESKI                          Shield #_____

Where Currently Employed  Eastern New York C.F.

Address  PO Box 338, Napanoch, NY 12458

_____


Defendant No. 2    Name  C. TUERO                            Shield #_____

Where Currently Employed  Eastern New York C.F.

Address  PO Box 338, Napanoch, NY 12458

_____


Defendant No. 3    Name  J. OSTERHOUDT                       Shield #_____

Where Currently Employed  Eastern New York C.F.

Address  PO Box 338, Napanoch, NY 12458

_____


Defendant No. 4    Name  W.C. GREEN                          Shield #_____

Where Currently Employed  Eastern New York C.F.

Address  PO Box 338, Napanoch, NY 12458

_____


Defendant No. 5    Name  F. BUTLER                           Shield #_____

Where Currently Employed  Eastern New York C.F.

Address  PO Box 338, Napanoch, NY 12458

_____


## II.    Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the
caption of this complaint is involved in this action, along with the dates and locations of all relevant events.
You may wish to include further details such as the names of other persons involved in the events giving
rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.


A.    In what institution did the events giving rise to your claim(s) occur?  Eastern New York
C.F.

B.    Where in the institution did the events giving rise to your claim(s) occur?  The Special
Housing Unit ("SHU")

C.    What date and approximate time did the events giving rise to your claim(s) occur?  See Facts

D. Facts: On 11/11/07 I was placed in the Special Housing Unit ("SHU") in Eastern Correctional Facility ("Eastern C.F."), following a fight I had with an inmate. Defendant FARRELL and sergeant Barg supervised my admission into the SHU. They strip-frisked me and had me sit in the B.O.S.S. chair search. I did not possess a weapon or anything that could be used to fashion one with. Defendants P. FALESKI, FARRELL and sergeant Barg then escorted me to A Gallery in the SHU and locked me in 5 cell. Neither of the Defendants, to wit, P. FALESKI or FARRELL inspected the cell equipment in my presence, in violation of Department of Correctional Services ("DOCS") Directive No. 4933, § 302.1(d)(2). Furthermore, contrary to the "pre-completed" Cell Inspection Sheet that was left on the bed in 5 cell, a copy of Eastern C.F.'s SHU Rules and Regulations Manual ("SHU Regulations Manual") was not in the cell, nor did anyone hand me a copy of said regulations, in violation of Directive No. 4933, § 302.1(c). I made sure I noted that I was not provided with a copy of the SHU Regulations Manual on the Cell Inspection Sheet when Defendant FARRELL ordered me to sign it. And I subsequently filed a grievance complaining that I had not been provided with a copy of the SHU Regulations Manual.

2. In the interim, my personal property (which was still in my (See attached CONTINUATION OF FACTS . . . )

**What happened to you?**

**Who did what?**

**Was anyone else involved?**

**Who else saw what happened?**

## III. Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. A bruised and sore testicle, which is medically documented, and a bruised and sore shoulder, which is also medically documented, and bruises and soreness in both my wrists.

## IV. Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes X No _____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____ See Facts _____

_____

B. Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes _X_    No ____    Do Not Know ____

C. Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes _X_    No ____    Do Not Know ____

If YES, which claim(s)? _All._

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes _X_    No ____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes ____    No ____

E. If you did file a grievance, about the events described in this complaint, where did you file the grievance? _At Eastern New York C.F. and Sing Sing C.F. and Auburn C.F._

1. Which claim(s) in this complaint did you grieve? _Every single one of them._

_____

2. What was the result, if any? _Some where granted in part, others completely denied, and the sexual and physical assault was covered up._

3. What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process. _I appealed each and every grievance to DOCS Central Office Review Committee, and I wouldn't let it cover-up the sexual and physical assault incident no matter how hard it tried. I kept on appealing and challenging DOCS claims about that particular grievance._

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here: _____

_____

_____

_____

_____

2. If you did not file a grievance but informed any officials of your claim, state who you

informed, when and how, and their response, if any: _____

_____

_____

_____

_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. The grievance office supervisor at Eastern New York C.F. tried to cover-up Defendants P. FALESKI and FARRELL's acts of sexually and physically assaulting me by claiming that he filed my grievance about that incident under a number that was actually assigned to a different grievance. When this switch-up was revealed, I filed another grievance about the sexual and physical assault at Sing Sing and continually appealed to CORC in regards to both grievances. I have documented proof of my efforts.

Note:    You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.    Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). See CONTINUATION OF FACTS _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**VI. Previous lawsuits:**

On these claims

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____ No _X_

B. If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

   1. Parties to the previous lawsuit:

   Plaintiff _____

   Defendants _____

   2. Court (if federal court, name the district; if state court, name the county) _____
   _____

   3. Docket or Index number _____

   4. Name of Judge assigned to your case _____

   5. Approximate date of filing lawsuit _____

   6. Is the case still pending? Yes _____ No _____

   If NO, give the approximate date of disposition _____

   7. What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?) _____
   _____
   _____

On other claims

C. Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _X_ No _____

D. If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

   1. Parties to the previous lawsuit:

   Plaintiff _McKethan, et al.,_

   Defendants _Mantello, et al._

   2. Court (if federal court, name the district; if state court, name the county) _Northern District of New York_

   3. Docket or Index number _Can't recall._

   4. Name of Judge assigned to your case _Can't recall_

   5. Approximate date of filing lawsuit _2000._

   6. Is the case still pending? Yes _____ No _X_

   If NO, give the approximate date of disposition _2004_

7. What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?)  _Settled._

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 22 day of _January_, 20_10_.

Signature of Plaintiff  _William M McKethan_

Inmate Number  _93-A-6107_

Institution Address  _Shawangunk C.F._
_P.O. Box 700_
_Wallkill, New York 12589_

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this 22 day of _January_, 20_10_, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:  _William M McKethan_

previous locking location in C-Dorm) was searched and packed, then transported to the SHU where it was searched again by the SHU Staff for contraband per Directive #4933. Upon admission to the SHU I asked Defendant FARRELL if I could have my prescription eyeglasses. He denied my request in violation of Directive #4933, so I subsequently filed a grievance with the Inmate Grievance Resolution Committee (IGRC).

3. On 11/13/07 I was taken to the SHU Property Inventory Room and my property was inventoried by a officer under the supervision of the steady SHU supervisor, to wit, Defendant W.C. GREEN. Defendant W.C. GREEN authorized me to possess, inter alia, my universal crown[1] while in the SHU. Every item I was allowed to possess was thoroughly searched pursuant to Directive #4933, §302.2(c). No weapon or any material one could be fashioned from was found nor given to me.

4. On 11/23/07, when I locked in after a shower, someone announced: "IGRC on rounds!" When the IGRC sergeant came by I complained that I had sent grievances to the IGRC office about the conditrions in the SHU and had not heard anything. He promised to look into it, then asked if everything was okay on A-Gallery.

---

[1] The universal crown is a hemispheric head cap that usually has a tassel and is made of cloth, knitted or crocheted, mulitcolored or single colored. There are no color restrictions. It must fit close to the head (hair) and is worn by male members of The Nation of Gods and Earths (females wera "headwraps"), as we were told to by Allah, the Father of our Nation.

I complained that there were clumps of hair and discarded soaps on the floor in the shower that had been there for weeks because no one was cleaning the shower stall.

5. No sooner than the IGRC sergeant walked off, Captain Coleman and Defendant FARRELL appeared at the cell door. Captain Coleman put his face to the cell door window, then left. Then I heard the IGRC sergeant ask: "Why is the shower so filthy?" Defendant FARRELL responded: "It's gonna be cleaned today."

6. A while later I heard the officer that worked in the console control cage steadily say: "Go tell him to give up that hat he was wearing on the medical trip Monday.[2] Defendant J. OSTERHOUDT came to the door, smiling, and said: "Hey McKethan, they told me to come get that 'fly' hat you got in there." I told him I didn't have a hat in the cell, and the record of in-cell property would verify it. Defendant J. OSTERHOUDT walked off. A few seconds later Defendant P. FALESKI came to the door and said: "Since you like writing grievances and complaining to sergeants while brass is walking, hand over that hat or I'm gonna write you a ticket (sic, misbehavior report)." I responded again that I didn't have a hat in the cell with me.

7. Defendant P. FALESKI walked off, then came right back and screamed: "Cell search!" He ordered me to turn around, then he opened the feed-up hatch and ordered me to first put my hands behind

---

[2] The console cage officer (female caucasian, blond hair) saw me in the holding pen on my way to Albany Medical Center as she entered the prison for work. I was wearing my universal crown. But all officers knew or should have known that inmates are no longer allowed to wear "state green hats" on outside tripss anymore. Only approved religious headwear. My crown's colors consisted of: Black, Gold and White.

my back, then stick them through the hatch. The manuver was near impossible and caused great pain to my shoulders. He then handcuffed me. After he cuffed me, he had the console officer open the door, at which point in time he told me to turn back towards him so he could pat-frisk me. While frsiking me the Defendant, to wit, P. FALESKI, grabbed my penis and testicles roughly and gropped my privates while asking: "What ya got here, huh? I told him to stop, but I remained still so as not to give the impression that I was resisting the frisk. He then grabbed my buttocks and gropped my anal region repeatedly. I felt and still feel violated, humiliated, shame, disrespected, and angered.

8. Defendant P. FALESKI, without provocation, grabbed the handcuffs and dragged me out the cell backwards, then shoved me towards the front of A-Gallery, where Defendant FARRELL stood waiting with a smile on his face. Defendant FARELL opened the shower gate and ordered me to step in. The light in the shower was cut off. As I stepped up to clear the lip of the elevated shower stall, Defendant FARRELL, without provocation, punched me in the back of my head and caused me to trip on the lip of the shower stall. As a result, I stumbled and banged my left shoulder on the wall. Defendant FARRELL slammed the shower gate, locked it, then asked: "That wasn't the arm you wrote all them grievances with was it?" When I turned and looked he was smiling at me again. Then he said: "None of the officers down here were bothering you, but you had to start writing all those grievances and crying to the grievance sergeant in front of the

captain about the shower. Now, you and I are gonna be real good
friends."

9. As I stood in the shower, shoulder throbbing with pain,
Defendant P. FALESKI flung my universal crown to the front of the
gallery, where it landed on the floor near Defendant FARRELL.
Defendant FARRELL looked at me first, then, while smiling, put his
boot on my universal crown, started dragging my crown across
the dirty floor and said: "I'm gonna use it to clean the shower!"
He dragged my crown off the gallery, then came back, smiling. I
explained that the Religious Services Directive says that when there
is a question about head apparel the item should not be confiscated
pending investigation by the Coordinating Chaplain, and if need be,
the outside group or the office of Ministerial Affairs. Defendant
FARRELL responded: "Fuck them, I run SHU!"

10. When Defendant P. FALESKI finished in the cell, he came and
got me out of the shower. While escorting me back to 5 cell he
asked: "How did you like my hand on your cock and asshole Mr. McKethan?"
When the nurse came through dispensing medications later that night
I reported what Defendant FARRELL and P. FALESKI had done to me to
her. She conducted an embarrassing visual examination of my privates
and anus in the presence and within the view of her escorting officer.
I filed a grievance about this incident and wrote complaints to
the Superintendent and DOCS' Inspector General.

11. On 11/26/07, during the 3X11 shift, when Defendant J. OSTERHOUDT
was giving out prisoner SHU supplies, he said: "Yo man, I don't know

·if that happened to ya. I mean, I'm not calling you a liar or nothin'. But FARRELL and FALESKI told me to say I was there when they frisked you and put you in the shower, and if anybody asks to say nothing happened. I don't want to be involved in this shit, but I can't go against other officers. You understand, right? I just got this job. I'm not trying to go back to being a bouncer."

12. On 12/05/07 Defendants P. FALESKI and J. OSTERHOUDT came to the cell door and announced "Cell Search." Defendant P. FALESKI said: "Dep. HEALEY ordered it!" Defendant J. OSTERHOUDT handcuffed me and locked me in the shower. After I was returned to the cell, Defendant P. FALESKI came to the door and said: "Drop the greivances and the (sexual harassment) complaints and I'll leave you alone." My legal documents were "wet" and pages of my trial transcripts were "torn" and "missing." I filed a grievance about this.

13. On 12/06/07 Defendant FARRELL came to the door and told me to pack because I was moving. I told him that I needed draft bags or plastic garbage bags to pack with. He responded: "Yeah, well, too bad. Either make due or I'll move you and let my P.C. (Protective Custody) porter pack your cell for you, and you won't like that."

14. I used the bed sheets and blanket to make a sack to carry my legal work with. The make-shift sack weighed close to 60 pounds.

15. Defendant FARRELL came back and opened the feed-up hatch and cuffed my hands in front of my body through the hatch. He applied the cuffs so tight that I immediately pleaded with him to loosen them. He ignored me. When the cell door opened he began to apply the

Black Box device roughly, then the chain, at which time I pleaded with Defendant F. BUTLER to instruct Defendant FARRELL to loosen the handcuffs becuse they were hurting my wrists. He ignored me too.

16. Defendant FARRELL told me to pick up my property and go to 27 cell on C-Gallery. Defendants J. OSTERHOUDT and P. FALESKI were also present. At this point in time, a feeling of dread washed over me because I knew that I would be the only prisoner on C-Gallery. Defendant HEALEY had approved the temporary closing of C-Gallery so the cells could be painted. So I asked who had approved the cell move. Defendant FARRELL said: "Dep. HEALEY personally approved your cell change."

17. I struggled with my property, causing severe injury and pain to my wrists. When I arrived at 27 cell none of the Defendants, to wit, F. BUTLER, J. OSTERHOUDT, P. FALESKI or FARRELL, inspected the cell equipment in my presence in violation of Directive #4933, §302.1(d)(2). When I entered the cell Defendant FARRELL told me to face the door. The cell light was off. Its controlled by the officer in the control cage. Defendant FARRELL removed the waist chain, then directed the console officer to close the door. Defendant FARRELL opened the feed-up hatch and ordered me to put my hands through. As soon as he removed the handcuffs, I asked for medical attention for my wrists, which were extremely sore and discolored. Defendant FARRELL turned to Defendant F. BUTLER and said: "He's all right." Then left.

18. I inspected the cell as best I could while in pain and

in the dark. The mattress was the old, outdated, cotton cloth covered kind. The date on it read 1/00 (i.e. January 2000), which means that per Eastern's mattress excahnge policy and procedure it was "5 years past its expiration date."

19. The mattress was also filthy. There was a gigantic rust stain down the middle on one side, and both sides had water stains (possibly urine), and one side had two gapping holes with cotton stuffing coming out.

20. Defendant J. OSTERHOUDT reurned and passed me a Cell Inspection Sheet that had been pre-completed to reflect that everything in the cell was in "good condition." He ordered me to sign it. When I complained about the condition of the mattress and asked for another one, he told me to give him back the form. When I did this, he said: "I'll just mark inmate refused to sign." Then he slammed the cell hatch and left.

21. An Office of Mental Health Staff person subsequently made rounds (female caucasian, very kind and very professional). I complained that Defendant FARRELL had severely damaged my wrists with the handcuffs, then showed her my wrists through the cell door window. I told her how Defendants F. BUTLER, J. OSTERHOUDT, P. FALESKI and FARRELL had ignored my requests for medical attention for my wrists; that the matterss was not fit for use, and asked if she could get the cell lights turned on. The woman said she would notify someone, then left.

22. Approximately 15 minutes later Defendant FARRELL came to

the door and said: "I heard you're complaining. As for the mattress, you're getting a ticket for that. And, if you keep asking for medical attention you'll get a ticket for that too." I again asked for medical attention.

23. About 30 minutes later Defendant F. BUTLER came to the door and said he'd give the nurse a call.

24. About 20 minutes later Defendant F. BUTLER came back and said: "The nurse will be down at 7:00 p.m. to offer flu shots. Ask to see her then.: I held up my swollen and discolored wrists for him to see and begged for medical treatment. He then said: "They weren't like that a minute ago!" Then left

25. Defendant F. BUTLER came back 15 minutes later with another officer and told me to put my wrists through the feed-up hatch, then the officer with him photographed my wrists. Then they left. About 10 minutes later they came back and the officer told me he was going to handcuff my wrists "carefully." After he cuffed me they escorted me to the hospital where I was examined by a nurse who gave me a bag of ice and Ibuprophen and promised she'd schedule me to see the doctor. Then I was taken back to the SHU.

26. Approximately 2 minutes after I was locked into 27 cell Defendant FARRELL came to the door and said: "I promise you I'm going to kill you before you get off this unit. And if I can't get you like I want to, I'm gonna say you tried to attack me or one of the officers and get you some more time to go with that 25 to Life you're doing, asshole. You fucking bitch. Now grieve that.

They'll never take your word over mine. You're just a piece of shit convict!"

28. On 12/07/07 I was served with two retaliatory and false misbehavior reports. The first, authored by Defendant J. OSTERHOUDT, charged me with destruction of state property (i.e. the mattress in 27 cell). The second, authored by Defendant F. BUTLER, charged me with "self-harm" (i.e. the injury Defendant FARRELL caused to my wrists with the handcuffs). The times they gave for the alleged incidents was 5 minutes apart.

29. During the ensuing disicplinary hearing on Defendant J. OSTERHOUDT'S misbehavior report, I was denied the minimal due process right to call a witness and present documenray evidence in my defense. The determination was administratively reversed on 02/11/08, after I served the penalty.

30. In the interim, I was found "not guilty" of Defendant F. BUTLER'S false and retaliatory charge that I had harmed myself.

31. On 12/09/07 Defendant C. TUERO and officer J. Mathews came to the cell and announced "cell search". I was handcuffed and then placed in the shower stall at the front of C-Gallery. Officer Mathews left the gallery, but Defendant C. TUERO went to search 27 cell by himself. A few minutes later, defendant W.C. GREEN, the steady SHU supervisor, entered C-Gallery. As he passed the shower stall he gestured with his hands for Defendant TUERO to "low down" or "wait". As soon as Defendant W.C. GREEN had passed the shower, Defendant C. TUERO yelled: "I think I see something!"

32.     Defendants W.C. GREEN and C. TUERO subsequently left C-Gallery and went to the console cage. I heard Defendant C. TUERO ask the console officer for a window key (sic, security screen key). The Defendants, to wit, C. TUERO and W.C. GREEN, went back to 27 cell. I heard some banging, then Defendants C. TUERO and W.C. GREEN went back to the console cage. Defendant C. TUERO and officer Mathews subsequently came back to the shower, and put me back into 27 cell, then left.

33.     When I inspected the cell nothing was out of place, which is highly uncharacteristic of a SHU cell search, or any cell search. It became apparent to me that no search had taken place, so I began to look around out of fear that a weapon or other contraband had been planted.

34.     On 12/10/07 when the 7X3 tour began, Defendant FARRELL came to the cell door and said: "I heard you got another ticket (sic, misbehavior report) yesterday." he was smiling from ear to ear when I looked at him. Shortly thereafter, I was served with another false and retaliatory misbehavior report, this one authored by Defendant C. TUERO, charging me with inter alia possession of a weapon that Defendant C. TUERO reported that he "found behind the locked security screen" in front of the window in 27 cell. Immediately after the serving officer left, the console cage officer cut off the cell lights, leaving me in darkness.

35.     Defendant FARRELL came back to the door and said: "Why are you angry? Do you need mental Health? I bet you won't get around that weapon!" He started laughing, then left.

36.     In the interim, I never received a better mattress. As a result, I was deprived of sleep for 6 days because I couldn't sleep

on the steel bedframe without a sanitary mattress. Approximately 6 days later I was moved to 31 cell on C-Gallery, which was inspected by Defendant J. OSTERHOUDT in my presence, so I signed the Cell Inspection Sheet for 31 cell. Defendant HEALEY came to the cell door window right after I gave Defendant J. OSTERHOUDt the Cell Inspection Sheet and said: "Make sure you search that cell for waepons", then started laughing as he walked off.

37. On 12/19/07 I was found guilty on the weapon frame-up and sentenced to an additional 90 days SHU confinement. As a result, I was transferred to a SHU prison named Upstate Correctional Facility.

38. On 02/20/08 I received a administrative reversal on Defendant C. TUERO'S false and retaliatory misbehavior report determination. DCOS's Division of Classification and Movement transferred me to Sing Sing Correctional Facility (Sing Sing). While there, Defendant W.C. GREEN came to the cell I was assigned to, dressed in a lieutenant's uniform, and said that he was there to interview me about my grievance against him. I refused to talk to him.

39. The aforementioned acts, omissions, policy, practice and custom of retaliating against me was done because of my grievances about the conditions in Eastern's SHU and the treatment I received there.

### FIRST CAUSE OF ACTION:
### RETALIATION FOR EXERCISING CONSTITUTIONAL
### RIGHT TO FILE GRIEVANCES

40. The above-mentioned acts, policy, pratcice and custom of Defendant P. FALESKI, to wit, sexually assaulting me, and of Defendant FARRELL, to wit, physically assaulting me, and of

Defendants J. OSTERHOUDT, F. BUTLER, and C. TUERO, to wit,
filing false misbehavior reports against me, was done solely in
retaliation because I exercised my constitutional right to file
grievances about the conditions in SHU and the treatment I received
there.

41.  By reason of the foregoing I seek DIRECT DAMAGES in the
amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

SECOND CAUSE OF ACTION:
CRUEL AND INHUMANE
TREATMENT

42.  I repeat and reiterate the allegations contained in
paragraphs 1 through 41 above as more fully set forth at length
therein.

43.  As a result of the acts of Defendant P. FALESKI and
FARELL, to wit, sexually assaulting me and physically assaulting
me. I suffered injuries to my left testicle, left shoulder, and
both wrists.

44.  By reason of the foregoing I seek COMPENSATORY DAMGES
in the amount of TWO HUNDRED THOUSAND DOLLOARS ($200,000.00).

THIRD CAUSE OF ACTION:
PATTERN OF CIVIL RIGHTS VIOLATIONS

45.  I repeat and reiterate the allegations contained in
paragrapghs 1 through 43 above as more fully set forth at length
therein.

46.  At all times stated hereinbefore and hereinafter mentioned,
Defendants P. FALESKI, J. OSTERHOUDT, F. BUTLER, C. TUERO, W.C. GREEN,
HEALEY and FARRELL were "Peace Officers" of the State of New York
acting as agents for DOCS, and who were employed to develope, and

effectuate, implement, and enforce DOCS Directives, policy, practice and custom.

47. Said employees were grossly and improperly trained, and said policy, practice and custom involved a pattern of Anti-Civil Rights activity in Eastern C.F.'s SHU, which violates the Civil Rights of prisoners, including myself, the Plaintiff WILLIAM McKETHAN, by causing me physical injury, denying me prompt and proper medical attention, and a sanitary mattress to sleep on for over 24 hours.

48. By reason of the foregoing I seek CONSEQUENTIAL DAMAGES in the amount of FIVE HUNDREN THOUSAND DOLLARS ($500,000.00).

## FOURTH CAUSE OF ACTION:
## COVER-UP AND CONSPIRACY

49. I repeat and reiterate the allegations contained in paragraphs 1 through 47 above as more fully set forth at legnth therein.

50. The Defendants P. FALESKI and J. OSTERHOUDT conspired to cover-up the damage Defendant P. FALESKI caused to my legal documents; Defendants P. FALESKI and FARRELL conspired to cover-up that Defendant P. FALESKI sexually assaulted me and Defendant FARRELL physically assautled me; Defendant HEALEY conspired with Defendants P. FALESKI, FARRELL, J. OSTERHOUDT and F. BUTLER to move me to a secluded area in the SHU so that I could be retaliated against for exercising my constitutional right to file grievances about the coniditions in the SHu and my treatment while there; and Defendants J. OSTERHOUDT, F. BUTLER, C. TUERO and W.C. GREEN conspired to cover-up the cruel and inhumane treatment and retaliation that I was isubjected to

while in Eastern's SHU.

51. By reason of the foregoing I seek PUNITIVE DAMAGES in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000.00).

January 21, 2010

I declare under penalty of perjury that the foregoing is true and correct

William M. Keith