UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM MCKETHAN,

                      Plaintiff,

   -against-                                                  9:10-CV-0334 (LEK/RFT)

P. FALESKI; C. TUERO; J. OSTERHOUDT;
W.C. GREEN; F. BUTLER; HEALEY; and
FARRELL,

                      Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff William McKethan ("Plaintiff"), a prison inmate proceeding *in forma pauperis*, commenced this *pro se* action pursuant to 42 U.S.C. § 1983 on March 15, 2010. Dkt. No. 2 ("Complaint"). The case was subsequently transferred to this Court from the United States District Court in the Southern District of New York. Dkt. No. 3. Defendants P. Faleski ("Defendant Faleski"), C. Tuero ("Defendant Tuero"), J. Osterhoudt ("Defendant Osterhoudt"), W.C. Green ("Defendant Green"), and F. Butler ("Defendant Butler") (collectively, "Defendants"), filed a Motion to dismiss the Complaint on September 13, 2010. Dkt. No. 22 ("Motion"). Plaintiff filed his Opposition to the Motion on September 22, 2010. Dkt. No. 26 ("Opposition"). For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**II.    BACKGROUND**

On November 11, 2007, Plaintiff was admitted to a Special Housing Unit ("SHU") at Eastern Correctional Facility under the supervision of Defendants Farrell and Faleski. Compl. at 3. According to Plaintiff, Defendants Farrell and Faleski neither inspected the cell nor provided him

with a copy of the SHU Rules and Regulations Manual, and that Defendant Farrell denied his request for his prescription glasses, all in violation of New York State Department of Correctional Services ("DOCS") Directives. Id. at 3, 8. Plaintiff filed grievances reporting this incident and complained to an Inmate Grievance Resolution Committee ("IGRC") Sergeant that the shower stalls in the SHU were dirty. Id. at 8-9.

Plaintiff alleges that on November 23, 2007, Defendants Faleski and Osterhoudt came to his cell door and began to verbally harass him for, as Defendant Faleski reportedly said, "writing grievances and complaining to sergeants while brass is walking." Id. at 9. Faleski then ordered a cell search, handcuffed Plaintiff's arms through the "feed-up hatch" in the door, which "caused [Plaintiff] great pain to [his] shoulders," and then proceeded to pat-frisk Plaintiff. Id. at 9-10. While frisking Plaintiff, Defendant Faleski allegedly "grabbed [Plaintiff's] penis and testicles roughly and grop[]ed [his] privates," buttocks, and "anal region." Id. at 10.

Defendant Faleski then brought Plaintiff to the shower area, where Defendant Farrell was waiting. Id. Defendant Farrell punched Plaintiff in the back of his head, "without provocation," which caused Plaintiff to trip on the "lip of the elevated shower stall" and bang his left shoulder on the wall. Id. Defendant Farrell asked Plaintiff, "That wasn't the arm you wrote all them grievances with was it? . . . . None of the officers down here were bothering you, but you had to start writing all those grievances and crying to the grievance sergeant in front of the captain about the shower." Id. at 10-11. Defendant Faleski then took Plaintiff back to his cell and asked Plaintiff how he liked Defendant Faleski's hand on his genitals and anal region. Id. Later that night, Plaintiff told a nurse about this incident, who conducted "an embarrassing visual examination of my privates and anus in the presence . . . of her escorting officer." Id. Plaintiff filled a grievance and wrote complaints to

2

both the Superintendent and DOCS Inspector General about the actions of Defendants Farrell and Faleski.  Id.  On November 26, 2007, Defendant Osterhoudt told Plaintiff that he was going to claim that he was also present when Defendants Farrell and Faleski frisked Plaintiff and put him into the shower, and that "if anybody asked [he'd] say nothing happened," because he did not want to "go against the other officers."  Id. at 11-12.

On December 5, 2007, Defendants Osterhoudt and Faleski approached Plaintiff's cell for a cell search allegedly ordered by Defendant Healey.  Id. at 12.  Defendant Osterhoudt handcuffed Plaintiff and locked him in the shower; when Plaintiff was returned to his cell, Defendant Faleski told him that if he "drop[ped] the gr[ie]vances and (sexual harassment) complaints . . . I'll leave you alone."  Id.  (parenthesis in original).  Once in his cell, Plaintiff discovered his legal documents were "'wet' and pages of [his] trial transcripts were 'torn' and 'missing,'" and he filed a grievance about this as well.  Id. (quotations in original).

On December 6, 2007, Defendant Farrell informed Plaintiff that he would be moving to another cell and that he had to pack up his property.  Id.  When Defendant Farrell handcuffed Plaintiff, Plaintiff claims that he applied the cuffs too tightly in spite of Plaintiff's requests that he loosen them, and that the handcuffs and Plaintiff's struggle to carry his property, which weighed "close to 60 [sixty] pounds," caused Plaintiff's wrists to be "extremely sore and discolored."  Id.  Plaintiff claims Defendants Butler, Osterhoudt, Faleski, and Farrell all ignored his requests for medical treatment, but Plaintiff also states that Defendant Butler in fact responded to his request for medical treatment,  photographed Plaintiff's wrists, and that he escorted him to a hospital where he was given ice and ibuprofen.  Id. at 14-15.  After Plaintiff returned to his cell, Defendent Farrell

came to his cell door and threatened to kill Plaintiff or falsely accuse Plaintiff of attacking him so Plaintiff would receive a longer prison term. Id. at 15-16.

Plaintiff was served with two misbehavior reports, both of which he claims were false and retaliatory: (1) a ticket from Defendant Osterhoudt, charging Defendant with the destruction of state property related to the mattress in his new cell;[1] and (2) a ticket from Defendant Butler, charging Defendant with "self-harm" related to the injury to his wrists from the handcuffs. Id. at 16. The determination on Defendant Osterhoudt's misbehavior report was "administratively reserved on [February 11, 2008], after [Plaintiff] served the penalty," and Plaintiff was found "not guilty" on Defendant Butler's misbehavior report. Id. Finally, on December 9, 2007, Defendant Tuero and another officer searched Plaintiff's cell. Defendant Green joined them, and Plaintiff alleges that Defendant Tuero planted a weapon in his cell in order to serve him with a false and retaliatory misbehavior report charging him with possession of a weapon. See id. at 16-17. On December 19, 2007, Plaintiff was found guilty of the charge in a disciplinary hearing, but this determination was administratively reversed on February 20, 2008. Id. at 18.

## III.   STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. at 1960. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at

---

[1] Plaintiff states that when he arrived at his new cell, which he describes as "27 cell," the mattress there was "the old, outdated, cotton cloth covered kind" and that "the mattress was not fit for use." Compl. at 13-14.

1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Thus, in spite of the deference a court is bound to give a plaintiff's allegations, a court may not assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged."  Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S.Ct. at 1950-51.

A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 754 n.6 (1963); see also Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 129 S.Ct. at 1949.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citation omitted).

**IV.   DISCUSSION**

Plaintiff alleges the following claims: (1) retaliation for his filing grievances in violation of the First Amendment; (2) "cruel and inhumane" treatment in violation of the Eighth Amendment; (3) improper training of Defendants resulting in violations of Plaintiff's rights; and (4) conspiracy to violate his constitutional rights.  Compl. at 18-21.  Defendants seek dismissal of Plaintiff's claims alleging conspiracy, liability in their official capacities, sexual harassment, negligence, and other

violations of state law.² Defs.' Memorandum of law in support of motion to dismiss ("DML") at 2-3. Defendants also seek dismissal of Defendants Butler, Healey, and Green from this action for lack of personal involvement in the alleged deprivations, and argue that they are all entitled to qualified immunity. Id. at 3-4. The Court addresses each of Defendants' arguments in turn.

**A. Eleventh Amendment**

Plaintiff attempts to bring this action against the Defendants in both their individual and official capacities. See Compl. at 1. The Supreme Court has held that the Eleventh Amendment bars suits against a State by its own citizens. Hans v. Louisiana, 134 U.S. 1 (1890). If a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." Rourke v. New York State Dep't. of Corr. Servs., 915 F.Supp. 525, 539 (N.D.N.Y. 1995) (citing Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993) (other citations omitted)). Thus, Plaintiff's claims for relief against all Defendants in their official capacities are dismissed pursuant to the Eleventh Amendment. However, Plaintiff's claims against the Defendants in their individual capacities are not barred by the Eleventh Amendment and do not warrant dismissal on this basis. Ex Parte Young, 209 U.S. 123 (1908).

Defendants also seek dismissal of Plaintiff's third cause of action, seeking monetary damages for a failure to properly train Defendants, who he claims were "acting as agents for

---

² Defendants contend that any pendent state law claims should be dismissed pursuant to Section 24 of the New York Corrections Law. DML at 12. Although Plaintiff's Complaint appears to allege that Defendants violated various state regulations and directives, Plaintiff states in his Opposition that his Complaint does not contain any pendent state law claims. Pl. Opp. at 8. The Court therefore does not construe his Complaint to raise any state law claims and does not address this portion of Defendants' Motion.

6

DOCS." DML at 9; Compl. at 19-20. Although it is unclear whether Plaintiff seeks to sue the State of New York or DOCS, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997) (citation and quotation omitted). Accordingly, Plaintiff's third claim is dismissed as barred by the Eleventh Amendment.

### B. Conspiracy Claims

Upon review of Plaintiff's Complaint, the Court finds that it alleges sufficiently specific facts to support an inference of a conspiracy to retaliate against him for filing grievances in violation of his First Amendment rights. In order to sufficiently state a retaliation claim, a complaint must allege "(1) that the speech . . . was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (citation and quotation omitted).

As "the filing of prison grievances is a constitutionally protected activity," Plaintiff's Complaint satisfies the first prong of the test. Id. at 352-53. Furthermore, Plaintiff's allegations of bodily injury and fabricated misbehavior reports sufficiently constitute adverse action against him. See Reid v. Bezio, No. 9:10-CV-609, 2011 WL 1577761, at *4 (N.D.N.Y. Mar. 30, 2011) (report-recommendation), adopted, 2011 WL 1585067 (N.D.N.Y. Apr. 26, 2011) ("[T]here is little doubt that a misbehavior report would constitute an adverse action.") (internal quotations omitted); Lewis v. Blazejewski, No. 03-CV-943S, 2007 WL 542117, at *5 (W.D.N.Y. Feb. 16, 2007) (quoting Gayle v. Gonyea, 313 F.3d 677 (2d Cir. 2002)). Lastly, the Complaint sufficiently alleges a causal connection between the protected conduct of filing grievances and the adverse action: Defendant Faleski's pat frisk was allegedly motivated because Plaintiff "like[d] writing grievances"; Defendant

7

Ferrell asked Plaintiff if he injured "the arm you wrote all them grievances with" after striking Plaintiff in the head; Defendant Faleski told Plaintiff that he would leave him alone if he dropped the grievances and sexual harassment complaints; and Defendant Farrell threatened to give Plaintiff more tickets if he continued to complain and request medical attention. Id. at 9-12, 14-15.

While Defendants do not contest the validity of Plaintiff's retaliation claims, they do seek dismissal of his conspiracy claims on the basis of the "intracorporate conspiracy doctrine," under which "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." DML at 10-11 (quoting Nassau County Employee 'L' v. County of Nassau, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004)). However, § 1983 permits a plaintiff to allege conspiracy between state actors where he is able to demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted). At the same time, the Second Circuit has noted that allegations of conspiracy pursuant to § 1983 "are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct evidence." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (quoting Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)).

In addition to stating a valid retaliation claim, Plaintiff's allegations regarding Defendants Farrell and Faleski's actions and statements towards him on November 23, 2007, coupled with Defendant Osterhoudt's alleged subsequent statements to Plaintiff that Defendants Farrell and Faleski had instructed him to say he had been there and to say that nothing happened, constitute circumstantial evidence of an agreement between Defendants to act in concert to punish Plaintiff for filing grievances.  See Compl. at 9-12.  Plaintiff's allegations that Defendants Farrell, Faleski, Green, Tuero, Butler, and Osterhoudt manufactured false charges of misbehavior against him, including conspiring to plant a weapon in Plaintiff's cell, further support such an inference.  Id. at 16-18.  See Hernandez v. Goord, 312 F. Supp. 2d 537, 546 (S.D.N.Y. 2004) (finding plaintiff had sufficiently stated conspiracy claim by alleging that after he complained about rights violations, "the staff who violated me tells a few of his colleagues that I've done so, then the word spreads around amongst those [DOCS] workers, and before you know it I start to get threatened, harassed, by [them]," and by citing "specific instances of conduct" in support of this allegation).  Accordingly, the Court finds that Plaintiff's retaliation claims against Defendants Faleski, Ferrell, Osterhoudt, Tuero, and Butler survive Defendants' Motion to Dismiss.

**C. Sexual Abuse of Plaintiff in Violation of the Eighth Amendment**

Plaintiff alleges three distinct Eight Amendment claims of cruel and unusual punishment based on sexual assault, excessive force, and Defendants' deliberate indifference to his serious medical needs.  See Compl. at 19-20.  As Defendants do not address the latter two of these claims, the Court only addresses whether Plaintiff has stated an Eighth Amendment claim based on Defendant Faleski's alleged groping of his genitalia during a pat-frisk search.

To state an Eighth Amendment claim, an inmate must prove that: (1) objectively, the alleged punishment or act is sufficiently serious such that it violates contemporary standards of decency; and (2) subjectively, the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In assessing whether this alleged injury satisfies the objective prong of this test, the Court considers that "[t]he developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than de minimis." Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000); cf. Montero v. Crusie, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001) (finding a failure to state Eighth Amendment claim where plaintiff did not allege any injury as a result of guard's squeezing his genitalia during pat frisking).

Plaintiff claims that as a result of Defendant Faleski's actions, he suffered a bruised and sore testicle as a result, in addition to feeling "violated" and "humiliated." Id. at 3, 10. On the face of the Complaint, these alleged injuries may be "objectively, sufficiently serious" to state a cognizable Eighth Amendment claim. Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997); see also Rodriguez v. McClenning, 399 F. Supp. 2d 228, 237-38 (S.D.N.Y. 2005) (finding that evolving "contemporary standards of decency" rendered sexual assault of plaintiff during pat frisk a violation of plaintiff's Eighth Amendment rights); Pagan v. Brown, No. 9:08-CV-0724, 2009 WL 2581572, at *10 (N.D.N.Y. Aug. 19, 2009) (finding that "plaintiff's allegations of sexual touching, if true, could constitute an Eighth Amendment claim upon which relief may be granted") (Kahn, J.). Moreover, the fact that Defendant Faleski later asked Plaintiff how he had liked Defendant Faleski's hands on his genitalia and anal region during the frisk evince a sufficiently culpable state of mind on the part

10

of Defendant Faleski to satisfy the subjective prong of the Eighth Amendment analysis. See James v. Hayden, 2008 WL 5062737, at *2 (S.D.N.Y. Nov. 25, 2008) (finding plaintiff had stated Eighth Amendment claim for sexual abuse where facts alleged in his complaint indicated that "'force was [not] applied in a good-faith effort to maintain or restore discipline,' but, rather, to 'maliciously and sadistically . . . caus[e] harm'") (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)). Accordingly, the Court finds that Plaintiff has sufficiently stated a claim for a violation of his Eighth Amendment rights based on Defendant Faleski's alleged sexual touching of Plaintiff during a pat frisk.

### D. Personal Involvement

In order to establish liability under § 1983, a plaintiff must show that a defendant was personally involved in the complained-of conduct. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). The doctrine of *respondeat superior* is inapplicable to § 1983 claims. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (internal citations omitted); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Rather, the personal involvement of a supervisory defendant may be shown when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon, 58 F.3d at 873.

Defendants Butler, Healey, and Green seek to be dismissed from this action on the grounds that they were not personally involved in the conduct of which Plaintiff complains. Plaintiff

references Defendant Healey in the Complaint in alleging that the other Defendants informed Plaintiff that Defendant Healey had authorized Plaintiff's cell transfer. Compl. at 12-13. This is insufficient to allege that Defendant Healey was personally involved in the alleged wrongdoing, as a cell transfer is not a *per se* constitutional deprivation of Plaintiff's rights. However, Plaintiff also alleges that he witnessed Defendant Healey instruct Defendant Osterhoudt, "Make sure you search [Plaintiff's] cell for weapons," and "started laughing as he walked off." Id. at 18. Taken in tandem with Plaintiff's allegations that the other Defendants planted a weapon in his cell in retaliation for filing grievances, the Court finds that Plaintiff has alleged sufficient facts to support a claim that Defendant Healey was personally involved in the conspiracy to retaliate against him. See Hernandez, 312 F. Supp. 2d at 547 (finding plaintiff sufficiently alleged supervisor's personal involvement to survive a motion to dismiss, where plaintiff alleged instances in which supervisor ordered subordinates to violate his rights).

Turning to Defendant Green, Plaintiff claims that he appeared to have signaled to Defendant Tuero to "low down" or "wait" as he passed Plaintiff's cell while Defendant Tuero was searching it and found the allegedly planted weapon in the cell. Compl. at 16. Plaintiff claims that "[a]s soon as [Defendant Green] had passed the shower, [Defendant Tuero] yelled: 'I think I see something!'" Id. These allegations, taken as true for purposes of Defendants' Motion, raise an inference that Defendant Green also was connected with this particular retaliatory action against Plaintiff. Cf. Hernandez, 312 F. Supp. 2d at 548 (dismissing complaint against defendants who were "never connected in the complaint to any particular adverse action" against the plaintiff). Defendant Green therefore is not dismissed from this action at this time.

Finally, Defendants erroneously argue that Defendant Butler is only "alleged to have done nothing to relieve tight handcuffs." DML at 5. Rather, Plaintiff also claims in the Complaint that Defendant Butler issued him one of the "retaliatory and false" misbehavior reports. Compl. at 16. This allegation is sufficient to connect Defendant Butler to at least one of the allegedly retaliatory actions in Plaintiff's Complaint. See Hernandez, 312 F. Supp. 2d at 548.

### E. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity, which shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Generally, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004). Although a Rule 12(b)(6) motion may be granted where the complaint on its face "establishes the circumstances required as a predicate to a finding of qualified immunity," Green v. Maraio, 722 F.2d 1013, 1019 (2d Cir. 1983), this exception does not apply here, as the right to be free from retaliation for protected First Amendment conduct was both "clearly established" at the time of the alleged incident and has been "clearly established since at least 1968." Jackler v. Byrne, Dkt. No. 10-0859-cv, 2011 WL 2937279, at *16 (2d Cir. July 22, 2011) (citing Munafo v. Metrop. Transp. Auth., 285 F.3d 201, 211 (2d Cir. 2002)). The Court therefore denies Defendants' request for a finding of qualified immunity at this juncture.

### IV. CONCLUSION

Accordingly, it is hereby:

13

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 22) is **GRANTED in part** and **DENIED in part**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiff's claims alleging improper training and claims against Defendants in their official capacities are **DISMISSED** for failure to state a claim upon which relief may be granted, but the remainder of Plaintiff's claims may proceed; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order upon the parties to this action.

**IT IS SO ORDERED.**

DATED:   September 30, 2011
         Albany, New York

Lawrence E. Kahn
U.S. District Judge